## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GRACETOWN, INC.
174 W 4th Street, Suite 161
New York, NY 10014

    Plaintiff,

  v.

UNITED STATES DEPARTMENT OF THE
TREASURY, OFFICE OF FOREIGN
ASSETS CONTROL,
1500 Pennsylvania Avenue, NW, Washington
DC 20220

SCOTT K. BESSENT, Secretary, United
States Department of the Treasury, in his
official capacity;

BRADLEY T. SMITH, Director, Office of
Foreign Assets Control at U.S. Department of
the Treasury, in his official capacity;

UNITED STATES DEPARTMENT OF
JUSTICE; and
950 Pennsylvania Avenue, NW, Washington,
DC 20530

PAMELA J. BONDI, Attorney General, United
States Department of Justice, in her official
capacity,

    Defendants.

Civil Action No.

**COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF**

## PRELIMINARY STATEMENT

1. Plaintiff Gracetown, Inc. ("Plaintiff" or "Gracetown") brings this action pursuant

to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"), to challenge the Penalty

Notice ("Penalty Notice") issued by the United States Department of the Treasury's Office of

Foreign Assets Control ("Defendant OFAC" or "OFAC") on December 4, 2025. The Penalty Notice constitutes final agency action reviewable under 5 U.S.C. § 704.

2.      Acting under authority delegated to it by Defendant United States Department of the Treasury ("Treasury Department"), Defendant OFAC, after a unilaterally conducted investigation and without any formal adjudication, imposed on Plaintiff a civil monetary penalty of $7,139,305 for alleged violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1708, including violations of the Ukraine/Russia-Related Sanctions Regulations ("URSR"), 31 C.F.R. § 589.201, and the Reporting, Procedures, and Penalties Regulations ("RPPR"), 31 C.F.R. part 501, including § 501.603(b) and § 589.101. Defendant OFAC purported to calculate and impose the penalty pursuant to its Enforcement Guidelines, 31 C.F.R. part 501, app. A ("Enforcement Guidelines").

3.      The penalty imposed upon Plaintiff by Defendant OFAC is excessive, grossly disproportionate to the alleged conduct to the point of being excessive under the Eighth Amendment of the United States Constitution, unsupported by the facts and record, and based on a misapplication of OFAC's own Enforcement Guidelines. Moreover, it imposes a type of sanction on Plaintiff that, as the Supreme Court recently recognized in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), requires determination by a civil jury under the Seventh Amendment of the United States Constitution. This final agency action is therefore in violation of the APA and Plaintiff's rights under the Constitution of the United States.

4.      Not only are Defendants seeking to impose upon Plaintiff a multimillion-dollar penalty that is excessive, punitive, and grossly disproportionate to the alleged conduct—conduct which, at most, resulted from Plaintiff's negligent administrative oversight of loan payments totaling only $31,250—they are doing so by arbitrarily singling out Plaintiff, intentionally

disregarding relevant mitigating factors, and departing from the principles of fair and consistent enforcement of the law that should apply to all American corporate entities. In this case, the full weight of the United States' administrative apparatus has been brought to bear against a small, unprofitable, and chronically understaffed entity. It is abundantly clear that the penalty imposed is aimed less at addressing the specific facts of this matter and more at advancing a broader campaign against a different target—Oleg Deripaska, a wealthy Russan national who was once associated with Plaintiff before divesting from it, well before his designation by Defendant OFAC in April 2018. Defendants have abused their administrative authority in a manner that, if allowed to stand, will set a precedent with adverse consequences for other small American companies, particularly those with current or historical connections to individuals of nationalities that may not be aligned with United States policy.

5.    The penalty imposed serves no legitimate remedial or deterrent purpose and appears intended solely to punish and discredit Plaintiff. It is markedly inconsistent with penalties imposed on similarly situated entities and departs from Defendant OFAC's own Enforcement Guidelines and long line of precedents without a reasonable explanation.

6.    In effect, the penalty seeks to impose a corporate death sentence on Plaintiff—an outcome made all the more unreasonable by Plaintiff's lack of financial capacity, its status as a first-time offender, and other mitigating factors, including its cooperation with Defendant OFAC's investigation and voluntary self-disclosure, all of which were well known to Defendant OFAC and thoroughly documented in the administrative record.

7.    As a result of Defendant OFAC's oppressive and legally unjustifiable penalty, Plaintiff asks the Court for, *inter alia*, injunctive and declaratory relief (a) vacating and setting aside the civil monetary penalty imposed by Defendant OFAC against Plaintiff, (b) declaring

Defendant OFAC's actions and imposed penalty as arbitrary, capricious, an abuse of discretion, and contrary to Plaintiff's constitutional rights, and (c) enjoining the Treasury Department and the United States Department of Justice ("DOJ") (collectively, the "Co-Defendants") from undertaking any collection efforts to satisfy, in whole or in part, any penalties imposed by Defendant against Plaintiff.

## **PARTIES**

8.    Plaintiff Gracetown, Inc. is a Delaware corporation with its principal place of business located in New York, New York.

9.    Defendant OFAC is a federal agency within the Treasury Department charged with administering and enforcing economic and trade sanctions based on U.S. foreign policy and national security objectives.  Defendant OFAC is responsible for investigating alleged violations of sanctions programs, issuing civil monetary penalties, and implementing regulations pursuant to the IEEPA, 50 U.S.C. §§ 1701–1708, and related authorities.

10.    Defendant Scott K. Bessent is the Secretary of the Treasury Department and is sued herein in his official capacity.  As the head of the Treasury Department, Defendant Bessent has ultimate responsibility for Defendant OFAC, including the initiation of enforcement actions and the referral of unpaid civil monetary penalties to the DOJ for collection pursuant to 50 U.S.C. §§ 1701–1708, 31 U.S.C. § 3711(g), and 31 C.F.R. § 5.16.

11.    Defendant Bradley T. Smith is the Director of Defendant OFAC and is sued herein in his official capacity.  As Director of Defendant OFAC, Defendant Smith is responsible for overseeing the administration and enforcement of the United States' economic sanctions programs, including the investigation of alleged violations, and the issuance and the imposition of civil monetary penalties under IEEPA, pursuant to 50 U.S.C. §§ 1701–1708, and related regulations.

4

12.    Defendant United States Department of Justice ("DOJ") is charged with the collection of civil monetary penalties imposed by other federal agencies, including Defendant OFAC, pursuant to 28 U.S.C. § 516, 31 U.S.C. § 3711(g), and 31 C.F.R. § 5.16.

13.    Defendant Pamela J. Bondi is the Attorney General of the United States and is sued in her official capacity.  As head of the DOJ, Defendant Bondi has ultimate responsibility for the collection of penalties imposed by Defendant under 28 U.S.C. § 516, 31 U.S.C. § 3711(g), and 31 C.F.R. § 5.16.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, including the APA, 5 U.S.C. §§ 701–706.  Judicial review is authorized under 5 U.S.C. § 704 because the Penalty Notice dated December 4, 2025, constitutes a final agency action, and prior to the filing of this suit, no other adequate remedy was available in any court.

15.    The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. §§ 702, 705, and 706, Federal Rules of Civil Procedure Rules 57 and 65, and its inherent equitable powers.

16.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(e)(3) because Plaintiff has maintained its principal place of business in this District and a substantial part of the events or omissions giving rise to the claims occurred here.

## STATEMENT OF FACTS

**A. Gracetown's Ownership, Structure, and Operations.**

17.    Plaintiff is a small Delaware corporation, formed in 2006 for the exclusive purpose of managing three residential properties—two located in New York, New York, and one in the District of Columbia.

18.    At all relevant times, Plaintiff's sole business has been the management and maintenance of the three residential properties and has over the last several years employed no more than two full-time employees.

19.    Oleg Deripaska, a Russian national and currently sanctioned individual, held ultimate beneficial ownership of Plaintiff at the time of Plaintiff's formation in 2006. On January 25, 2018, however, Mr. Deripaska transferred his ownership interest in Plaintiff to Mr. Pavel Ezubov. Ex. 1[1] (January 25, 2018 Sparticle Board Resolution). Mr. Deripaska's affiliation with Plaintiff ceased following the date of ownership transfer. Mr. Deripaska was later designated a Specially Designated National ("SDN") by Defendant OFAC on April 6, 2018.

20.    In 2022, Mr. Deripaska was named as a defendant in a criminal indictment, unsealed in September 2022, charging him with conspiracy to violate IEEPA. *See* Ex. 2 (*United States v. Deripaska et al.*, Case No. 1:22-cr-00518-PKC (S.D.N.Y. Sept. 29, 2022) ("Indictment")).

21.    By the time Defendant OFAC imposed its excessive and grossly disproportionate penalty on Plaintiff on December 4, 2025, Plaintiff had been a non-operational entity since 2022, with no employees, virtually no capital or assets, and no revenue. Plaintiff has not engaged in any substantive property management activities since in or about June 2022, and struggles to meet its

---

[1]    All citations and all exhibits referenced herein are intended to be, and are presumed to be, part of the administrative record before OFAC in connection with the challenged action.

current financial obligations given its limited access to U.S. banks due to their perceived concerns about compliance risks.  Plaintiff generates no revenue.

**B. The Loan Payment Transactions Giving Rise to Plaintiff's Penalty Challenge.**

22.    The penalty imposed by Defendant OFAC is based on Plaintiff's acknowledged inadvertent and passive receipt of 24 monthly loan payments totaling only $31,250 over the course of two years—a *de minimis* amount in the context of sanctions enforcement precedent, where comparable actions involving transaction values under $100,000 have resulted in no penalty or have been deemed non-egregious, even when Defendant OFAC found that deliberate steps had been taken to evade sanctions.  These enforcement precedents are included in the record through Plaintiff's citations to, and reliance upon, Defendant OFAC's official enforcement releases in its submissions to OFAC.[2]  Ex. 3 (Plaintiff's November 22, 2024 Pre-Penalty Notice Response ("PPN")).

23.    The loan payments received by Plaintiff originated from a U.S. person who, in 2007, incurred a debt to Baufinanz Investments Limited ("Baufinanz"), an entity owned at that time by Mr. Deripaska.  The U.S. person failed to repay the debt, leading to a 2013 settlement agreement ("Settlement Agreement") between him and Baufinanz.  Under the Settlement

---

[2]    *See, e.g.*, *OFAC Issues a Finding of Violation to Nodus International Bank, Inc. for Violations of the Venezuelan Sanctions Regulations and the Reporting, Penalties and Procedures Regulations* (Oct. 18, 2022) (finding apparent violations of the Venezuelan Sanctions Regulations and the Reporting, Procedures and Penalties Regulations involving three transactions totaling $50,271.29, but determining that "the appropriate administrative action in this matter was a Finding of Violation in lieu of a civil monetary penalty" due to human error and other mitigating factors),  https://ofac.treasury.gov/media/928941/download?inline  (last visited Dec. 12, 2025); *OFAC Settles with S&P Global, Inc. for $78,750 Related to Apparent Violations of the Ukraine-Related Sanctions Regulations in 2016 and 2017* (Apr. 1, 2022) (finding apparent violations of the URSR involving acceptance of past-due payments totaling $82,500 from Rosneft, determining the matter to be "non-egregious" despite evidence of backdating and reissuing invoices to avoid sanctions time limits, and imposing a civil monetary penalty of $78,750), https://ofac.treasury.gov/media/921316/download?inline (last visited Dec. 12, 2025).

Agreement, the U.S. person agreed to repay a $105,000 debt to Baufinanz in small, recurring increments of approximately $1,250, generally received on a schedule, until the obligation was fully satisfied.

24.    As a result of the Settlement Agreement, Baufinanz (an affiliate of Plaintiff at that time), through a standard commercial arrangement, redirected the payments to Plaintiff, an entity then owned by the same ultimate owner.  The payments received by Plaintiff from the U.S. person, were recorded by Plaintiff as a loan to Baufinanz—a routine commercial transaction between two companies under common ownership.  These small, mostly consistent loan payments from the U.S. person to Plaintiff, which began in 2013 and continued over a seven-year period, were recorded by an independent outside accountant in the ordinary course of business, and forgotten about and overlooked over time given their low value and routine nature.

25.    Plaintiff used the loan payments received solely for the maintenance and operational costs for Plaintiff's managed properties.  Plaintiff recorded the transaction as an unsecured personal debt to Baufinanz, and the funds used for Plaintiff's maintenance costs were never repaid to Baufinanz or Mr. Deripaska.

26.    On January 25, 2018, Mr. Deripaska transferred his ownership interest in Plaintiff to Mr. Ezubov, who has retained ultimate beneficial ownership of Plaintiff from that date to the present.  Ex. 1.  Loan payments from the U.S. person to Plaintiff, under the 2013 Settlement Agreement, continued after the transfer of ownership following the process established five years earlier, as outlined above, without Mr. Ezubov recalling having approved this small-dollar arrangement five years later.  Since the payments came from the U.S. person rather than from Baufinanz, the connection to Baufinanz was not immediately apparent.  These payments were used

solely for Plaintiff's benefit and maintenance operations, and neither Baufinanz nor Mr. Deripaska derived any economic benefit from the funds after Plaintiff received them.

27.     On April 6, 2018, the date of Mr. Deripaska's designation as an SDN, Defendant OFAC issued a Notification of Blocking of Third Person to Plaintiff.    Ex. 4 (Notification of Blocking of Third Person).  The Notification was served on Plaintiff on April 9, 2018, referred solely to Mr. Deripaska, and made no mention of Baufinanz.  *Id.*  At the time of this Notification, Mr. Deripaska no longer owned Plaintiff and did not own the properties Plaintiff managed.

28.     Following Mr. Deripaska's designation, the longstanding series of loan payments from the U.S. person under the Settlement Agreement to Plaintiff continued as part of the previously established and largely unexamined routine, being regularly received and applied solely to Plaintiff's property maintenance costs, with no intent to benefit Mr. Deripaska or Baufinanz. Plaintiff's accountant accurately and transparently documented and accounted for these loan payments and Plaintiff, at no time, engaged in any effort to conceal or distort them.  Further, there is no evidence of any attempt to back-channel payments to Mr. Deripaska or Baufinanz for Mr. Deripaska's benefit, despite Defendant OFAC's baseless claims to the contrary.

29.     During the relevant period cited in the Penalty Notice—April 6, 2018 through May 7, 2020, which Defendant OFAC identifies as the post-designation timeframe in which Plaintiff received the U.S. person's loan payments—a total of $31,250, consisting of 24 loan payments of $1,250 each, was transmitted to Plaintiff.  Plaintiff generally received these payments on a predictable schedule pursuant to the longstanding arrangement and processed them in the same routine manner for property maintenance expenses.  Given the general regularity of the loan payments, source of the payment, and small dollar amounts, the payments did not draw significant attention from Plaintiff, its employees, or its ultimate beneficial owner, who did not play an active

role in Plaintiff's day-to-day operations. During this period, Plaintiff did not transfer any funds to Baufinanz or Mr. Deripaska under the loan arrangement, nor did either derive any benefit from the loan payments.

30.     Baufinanz was struck off the BVI company register in 2019. Baufinanz was formally dissolved in 2023. Upon formal dissolution, the company's assets vested in the Crown as *bona vacantia* and ceased to be the property of the entity.

**C. Plaintiff Was Denied Mitigation Credit Despite Cooperating with Defendant OFAC's Investigation.**

31.     Plaintiff admits, and has acknowledged on the record, that the 2018 Notification did not cause it to connect the passive, small-value payments it had received from the U.S. person since 2013 to any potential sanctions concern. Ex. 3. As reflected in the record, Plaintiff's failure to act at that time was not deliberate and was not part of any effort to conceal the loan payments. *Id.*

32.     After Plaintiff recognized that the accumulation of debt to Baufinanz, as reflected in its accounting records, could be construed as a violation of sanctions regulations, it took remedial measures, including blocking the debt, voluntarily disclosing the issue to Defendant OFAC, and cooperating with Defendant OFAC. Under the Enforcement Guidelines, such corrective action and voluntary self-disclosure ("VSD") are expressly identified as mitigating factors in penalty determinations, which Defendant OFAC failed to apply.

33.     Indeed, this matter was initiated by Plaintiff's VSD to Defendant OFAC, submitted on January 11, 2022, in which Plaintiff provided complete information regarding the relationship between the parties, the full extent of the payments it received, and the loan payments and accounting arrangements established in 2013 and continuing through the relevant period. Ex. 5 (Plaintiff's January 11, 2022 VSD).

34.     Plaintiff met the requirements for VSD credit under the Enforcement Guidelines, as its cooperation was comprehensive, voluntary, and truthful—facts Defendant OFAC expressly did not dispute in its October 8, 2024 PPN.   Ex. 6 (Defendant OFAC's October 8, 2024 PPN).   In its Penalty Notice dated December 4, 2025, however, Defendant OFAC formally denied Plaintiff's VSD mitigation credit, maintaining that the only acceptable remedial measure would have been for Plaintiff to stop receiving the loan payments it had collected since 2013 in 2018.   Ex. 7 (Defendant OFAC's Penalty Notice); Ex. 3.

35.     Further, in denying Plaintiff VSD credit, Defendant OFAC asserted that "Gracetown did not make a voluntary self-disclosure because OFAC, or another federal government agency, learned about Gracetown's substantially similar apparent violations before Gracetown submitted a disclosure…."  Ex. 6.   However, Defendant OFAC's PPN demonstrates that it substantially relied on the information Plaintiff provided in its VSD.   Indeed, Defendant OFAC's reliance is irreconcilable with its stated position and renders its determination arbitrary and capricious.   Defendant OFAC's understanding of the alleged violations was materially shaped and advanced by Plaintiff's disclosure, directly contradicting its claim that the disclosure lacked mitigating value.   While disregarding the contribution of the VSD and simultaneously relying on it, Defendant OFAC failed to articulate a rational explanation for the choice to deny mitigation credit for the facts provided by Plaintiff.

36.     On March 1, 2022, six months before Mr. Deripaska's Indictment, Defendant OFAC issued an administrative subpoena to Plaintiff.   Ex. 8 (Defendant OFAC's March 1, 2022 Administrative Subpoena).   In response, Plaintiff provided detailed information regarding the background, payment amounts, dates, and time period of the transactions at issue on August 15, 2022.  Ex. 9 (Plaintiff's August 15, 2022 Responses to Subpoena).

37.    On September 29, 2022, less than two months after Plaintiff's response to OFAC's administrative subpoena, the Indictment naming Mr. Deripaska as a defendant, was unsealed.  The Indictment charged Mr. Deripaska with conspiracy to violate IEEPA, alleging—incorrectly and in a conclusory fashion—that, among other things, since April 2018, "individuals and/or entities controlled by Deripaska transmitted millions of dollars to bank accounts held by Gracetown Inc." for the upkeep of the properties managed by Plaintiff "for the benefit of Deripaska," and that Plaintiff used millions of dollars provided by "individuals and/or entities controlled by Deripaska" to pay for various expenses associated with those properties.  Ex. 2 ¶¶ 2, 6.  The Indictment also seeks forfeiture of the Plaintiff-managed properties as alleged assets traceable to the alleged IEEPA violations.  *Id.* ¶ 32(b)-(d).

38.    On June 29, 2023, Plaintiff provided a supplemental response to the administrative subpoena following a change in outside counsel.  Ex. 10 (Plaintiff's June 29, 2023 Supplemental Response to Subpoena).

39.    Plaintiff further demonstrated its cooperation by entering into a tolling agreement on May 12, 2023 with Defendant OFAC during its investigation, which extended applicable statutes of limitation deadlines and further facilitated Defendant OFAC's review of the matter.  Ex. 11 (Plaintiff's May 12, 2023 Tolling Agreement).

40.    On March 26, 2024, Defendant OFAC requested Plaintiff's response to additional questions, seeking information also relevant to the broader allegations relating to Gracetown that are contained in the Indictment.  *See* Ex. 2.  Plaintiff responded to these questions on April 29, 2024.  *Id.*; Ex. 12 (Plaintiff's April 29, 2024 Supplemental Responses).

41.    Plaintiff submitted further correspondence to Defendant OFAC by letter dated January 10, 2025, and subsequently provided additional information in support of a proposed

settlement offer on March 14, 2025 as part of its PPN Response.  Ex. 13  (Plaintiff's January 10, 2025 Letter to Defendant OFAC).[3]  Despite all of this cooperation, Defendant OFAC did not grant sufficient mitigation credit in its PPN or Penalty Notice.

**D. Defendant OFAC Wrongfully Classified Plaintiff's Conduct as Egregious and Willful, and Failed to Recognize It as Non-Egregious Under Applicable Enforcement Guidelines.**

42.    On October 8, 2024, Defendant OFAC issued its PPN to Plaintiff proposing a civil monetary penalty for alleged violations of the URSR, stating its intention to impose the near statutory maximum penalty of $8,022,832 which included $7,951,738 for the "Apparent Violations," a "10 percent reduction from the base civil monetary penalty amount, and $71,094 pursuant to the RPPR for failing to timely report blocked property to OFAC." Ex. 6.  The alleged violations included only those relating to the loan payments Gracetown received, concurrent with the scope of Plaintiff's prior VSD, and did not allege any of the broader conduct alleged in Mr. Deripaska's Indictment.

43.    In calculating the proposed penalty, Defendant OFAC applied nearly every aggravating factor and denied all but two applicable mitigating factors under its Enforcement Guidelines, giving minimal partial credit for Plaintiff's executed tolling agreement and its robust cooperation with the agency.  *Id.* at 1.

44.    Defendant OFAC purported to calculate its proposed penalty in accordance with its own promulgated Enforcement Guidelines.  OFAC promulgated the Enforcement Guidelines to establish a consistent framework for the investigation and resolution of potential violations of U.S.

---

[3]    Plaintiff offered to settle the matter for $20,000, equivalent to approximately two-thirds of the value of transactions in question, which it believed was commensurate with its assessment of its cooperation, VSD, first-time offender status, the non-egregious nature of its conduct, Defendant OFAC's enforcement precedent and Enforcement Guidelines, and its financial circumstances.

economic sanctions laws.  Defendant OFAC issued the Enforcement Guidelines pursuant to authority granted under, *inter alia*, IEEPA, 50 U.S.C. §§ 1701–1706, with the stated intent of promoting transparency, predictability, and fairness in the enforcement of U.S. sanctions programs.

45.    Under the Enforcement Guidelines, Defendant OFAC is supposed to evaluate a range of factors in determining the appropriate enforcement response and civil penalty for an apparent violation.  These factors include: (1) the willfulness or recklessness of the conduct; (2) awareness of the conduct at issue; (3) the harm to sanctions program objectives; (4) the individual's or entity's compliance program and its effectiveness; (5) remedial measures taken in response to the violation; (6) the nature and extent of cooperation with OFAC during the investigation; (7) the existence of prior violations or a history of sanctions compliance issues; (8) the timing and scope of any voluntary self-disclosure; and (9) other aggravating or mitigating circumstances relevant to the case.  The Enforcement Guidelines further distinguish between "egregious" and "non-egregious" cases, with higher penalties applicable to egregious violations, and emphasize that the listed factors are weighed in light of OFAC's overall enforcement objectives, including deterrence, promotion of compliance, and protection of U.S. national security and foreign policy interests.  31 C.F.R. Part 501 app. A.

46.    Plaintiff's conduct did not meet the aggravating criteria set forth in the Enforcement Guidelines.  The alleged violations were neither willful nor reckless, Plaintiff had no prior history of sanctions violations, and Plaintiff fully cooperated with OFAC throughout the investigation. Moreover, Plaintiff's inadvertent conduct had no adverse effect on OFAC's overarching enforcement objectives and did not compromise U.S. national security or foreign policy interests. The funds at issue were of minimal value, remained within the United States, and were not transferred to any SDN, either domestically or abroad.  These mitigating factors, recognized under

14

31 C.F.R. Part 501 app. A, should have been given substantial weight in Defendant OFAC's assessment, yet the agency failed to appropriately apply them in determining the enforcement response and penalty.

47.    Rather, in its application of the Enforcement Guidelines as summarized in the PPN, Defendant OFAC classified Plaintiff's conduct as "egregious," and gave substantial weight to Defendant OFAC's General Factors Affecting Administrative Action ("General Factors") pursuant to the Enforcement Guidelines, specifically General Factors A, B, and C.  Ex. 6.  Under General Factor A, Defendant OFAC found willful or reckless conduct despite Plaintiff's statements showing that the Settlement Agreement establishing the payments received by Plaintiff from the U.S. person, which were used by Plaintiff for property maintenance and recorded by Plaintiff as a loan due to Baufinanz that was never repaid, predated Mr. Deripaska's sanctions designation by five years, involved the receipt of small dollar, generally routine, loan payments that were inadvertently received and not closely scrutinized, and that Plaintiff had not sought to alter or hide the loan payments received after the designation.  *Id.*

48.    In its penalty determination, Defendant OFAC also asserted that Plaintiff "willfully violated U.S. sanctions by continuing to deal in payments in which Baufinanz, a blocked person ultimately owned by Deripaska, had an interest, despite receiving clear and actual notice from OFAC that doing so was prohibited."  *Id.* at 5.  The record, however, is devoid of any evidence that Gracetown acted willfully.  As stated, the payments at issue were small in amount, totaling approximately $31,250 during the following two-year period and were generally routine loan transfers passively received, and inadvertently accepted without deliberate intent to violate U.S. sanctions.

49.     Further, Plaintiff is a small, commercially unsophisticated entity that, over the past several years has employed no more than two individuals, and effectively ceased operations in 2022.  Contrary to Defendant OFAC's asserted findings, Plaintiff lacked both the capacity and the sophistication to provide "undisrupted access to U.S.-based financial services" on behalf of Mr. Deripaska or Baufinanz, as alleged in the PPN.  *See id*. at 5.  Given these limitations, together with the small dollar value and inadvertent receipt of the loan payments at issue, the factual record does not remotely support Defendant OFAC's conclusion that Plaintiff's conduct was willful.  *See id*.

50.     Under General Factor B, Defendant OFAC found awareness and concealment, although Plaintiff's contemporaneous accounting records documented all loan payments openly and no effort had been made to conceal or obscure the source of the funds.  *Id*. at 2–3.  Plaintiff also submitted a VSD in 2022 and blocked and reported the Baufinanz debt, which are actions inconsistent with a finding of concealment.  Ex. 3.

51.     Under General Factor C, Defendant OFAC found harm to sanctions program objectives, although the record reflects that no sanctioned party received any benefit from the payments and that the funds were used domestically entirely for lawful property maintenance expenses.  *Id*. at 5–6.  Defendant OFAC's reasoning ignores that at the time of designation, Mr. Deripaska had no property or presence in the United States related to Plaintiff.  Baufinanz was struck off the BVI company register in 2019 and, under BVI law at that time, its owners and directors no longer managed or controlled the company or its assets, including the loan.[4]  This occurred shortly after the time when the payments in question should have ceased pursuant to the 2018 Notification.  Under the governing BVI law at the time, Baufinanz's strike-off prevented the company, its managers, and its directors from deriving a benefit in connection with the loan

---

[4]     Baufinanz was formally dissolved in 2023.

payments to Plaintiff made by the U.S. person. At a minimum, Defendant OFAC should have taken Baufinanz's strike-off into account when assessing alleged willful conduct, or considered the date of strike-off in relation to the timeframe it identified as the relevant period for the penalty.

**E. Defendant OFAC Denied First Violation Mitigation Credit in Violation of Plaintiff's Constitutional Rights.**

52.    Defendant OFAC's PPN denied Plaintiff mitigation credit for a "first violation" under General Factor D, despite the fact that Plaintiff had never previously received a notice of violation from Defendant OFAC. In explaining its penalty determination, Defendant OFAC stated that "first violation" mitigation credit was not appropriate in Plaintiff's case. *See* Ex. 3 at 6. Defendant OFAC's stated rationale was based on the novel theory that Plaintiff was previously owned by a "now-designated Russian oligarch" and that its business purpose was to provide property management services to three properties previously purchased, but not owned at relevant times, by that individual, apparently deeming the designation of the SDN as a violation by Plaintiff based on his prior ownership. *Id.*

53.    Yet, Defendant OFAC itself acknowledged in 2021, some years after the Notification, that Mr. Deripaska lacked sufficient contact with the United States and had no property or presence in the United States,[5] *i.e.*, that Mr. Deripaska did not own the three properties. Defendant OFAC has not pointed to anything to suggest that this was also not the case at the time

---

[5]    In Plaintiff's November 24, 2024 Response to Defendant OFAC's PPN (Ex. 3), Plaintiff noted that, in a motion to dismiss filed in separate litigation involving Mr. Deripaska, Defendant OFAC argued that Mr. Deripaska's ownership interest in a Delaware corporation, his beneficial ownership interest in RUSAL America Corp. (maintaining offices at 660 Madison Avenue, New York, NY), and his regular invitations to speak at Washington, D.C.-based think tanks were insufficient to establish standing to assert due process rights as a non-resident alien. *See Deripaska v. Yellen, et al.*, Case No. 19-cv-00727 (APM), mem. op. at 21–25 (D.D.C. June 13, 2021), https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2019cv0727-44.

of Mr. Deripaska's designation, the point at which the loan payments to Plaintiff should have stopped.

54.    Plaintiff has been owned by Mr. Ezubov, a Russian national and citizen of the Russian Federation, since January 25, 2018, prior to Mr. Deripaska's designation of April 6, 2018.

55.    The record, including cases cited in Plaintiff's responses to Defendant OFAC, shows that in comparable and even more egregious enforcement actions, Defendant OFAC has applied mitigation credit to entities and individuals.  In multiple such cases, Defendant OFAC specifically granted "first violation" mitigation credit.[6]  *Id.* at 6–7.

56.    It is abundantly clear that, despite having severed all ties with Mr. Deripaska before he became a SDN in April 2018, Plaintiff was singled out by Defendant OFAC apparently based solely on its prior and current Russian ownership, and particularly based on its prior association with Mr. Deripaska.  The conduct at issue was non-egregious, involving small-value, largely routine loan payments that were accepted inadvertently and without any intent to violate sanctions. Nevertheless, Defendant OFAC applied multiple harsh aggravating factors in its penalty determination and denied appropriate mitigation credit, despite Plaintiff's lack of any ongoing affiliation with Mr. Deripaska and the absence of facts supporting such punitive treatment.

* * * *

---

[6]    *See, e.g.*, *OFAC Issues a Finding of Violation to Nodus International Bank, Inc. for Violations of the Venezuelan Sanctions Regulations and the Reporting, Penalties and Procedures Regulations* (Oct. 18, 2022), https://ofac.treasury.gov/media/928941/download?inline (applying first violation credit for violations related to Venezuelan Sanctions); *Bank of America, N.A. Settles Potential Civil Liability for Apparent Violations of Multiple Sanctions Programs* (Jul. 24, 2014), https://ofac.treasury.gov/media/13531/download?inline (applying mitigation credit for no violation within last five years for a highly sophisticated U.S. financial institution in connection with Foreign Narcotics Kingpin Sanctions Regulations (FNKSR)).

57.    On December 4, 2025, Defendant OFAC issued a final Penalty Notice to Plaintiff that imposed a civil monetary penalty of $7,139,305.  Despite Plaintiff's comprehensive, voluntary, and truthful cooperation, and its satisfaction of criteria for mitigation credit under the Enforcement Guidelines, the penalty was calculated in a manner that departed radically, arbitrarily, and capriciously from, and misapplied, those Guidelines.  The penalty is grossly disproportionate and inappropriately punitive relative to the facts and circumstances described above and was imposed in violation of Plaintiff's constitutional rights.

58.    Indeed, other sanctions programs administered by OFAC provide significantly greater procedural safeguards than those afforded under the URSR.  For example, in civil penalty enforcement proceedings under the Trading with the Enemy Act ("TWEA"), respondents are entitled to adjudication before an Administrative Law Judge ("ALJ").  The regulatory framework established by OFAC for TWEA violations creates a comprehensive administrative process that includes ALJ hearings for parties who contest alleged violations.  By contrast, the URSR enforcement process lacks any comparable mechanism for impartial adjudication, depriving respondents of a meaningful opportunity to be heard before an independent decision maker.  This disparity in procedural protections is arbitrary and contrary to fundamental constitutional principles of due process.

59.    Defendant OFAC's imposition of the civil monetary penalty here occurred without any formal adjudication.  Because the imposition of the penalty is designed to punish Plaintiff for its alleged conduct, and to deter it or others from engaging in similar conduct in the future, it is a penalty of the type that should be enforced through traditional proceedings in a court of law.

**CAUSES OF ACTION**

**COUNT I**
Violation of the Administrative Procedure Act ("APA")
5 U.S.C. § 706(2)(A)
Arbitrary and Capricious Agency Action

60.     Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

61.     The APA, 5 U.S.C. § 706(2)(A), prohibits federal agencies from taking any action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiff challenges Defendant OFAC's December 4, 2025 Penalty Notice as unlawful under the APA, 5 U.S.C. § 706(2)(A), on the following grounds:

    a.  On December 4, 2025, Defendant issued a Penalty Notice to Plaintiff imposing a civil monetary penalty of $7,139,305, close to the maximum statutory penalty permitted under the Enforcement Guidelines.

    b.  The penalty imposed upon Plaintiff is excessive and bears no reasonable relationship to the alleged conduct, which involved only $31,250 in total loan payments received by Plaintiff during the relevant period identified by Defendant OFAC.

    c.  Plaintiff's statements on the record assert that the alleged conduct was unintentional.  Plaintiff passively accepted the generally routine loan payments from an affiliated entity for an extended period prior to the imposition of sanctions against Mr. Deripaska, and the continued acceptance of such payments thereafter was inadvertent, resulting from a negligent administrative oversight rather than intentional misconduct.  Defendant OFAC has failed to cite to any evidence that would belie the unintentional nature of this conduct.

d.  After recognizing that the accumulation of debt to Baufinanz, as reflected in its accounting records, could be construed as a potential violation of sanctions regulations, Plaintiff implemented remedial measures, including blocking the debt, voluntarily disclosing the matter to Defendant OFAC, and cooperating with Defendant OFAC.  The Enforcement Guidelines expressly identify corrective action and voluntary self-disclosure as mitigating factors in penalty determinations. Defendant OFAC's failure to apply these factors constituted a departure from its own Guidelines.

e.  The agency's understanding of the alleged violations was materially shaped and advanced by Plaintiff's VSD, directly contradicting its claim that the disclosure lacked mitigating value.  By disregarding the contribution of the VSD while simultaneously relying on it, OFAC failed to articulate a rational explanation for the choice to deny mitigation credit for the facts provided by Plaintiff.

f.  Plaintiff thereafter engaged in full and good-faith cooperation with Defendant OFAC's investigation, including submitting comprehensive and truthful responses to information requests, including the Subpoena and subsequent questions, producing relevant documents, and entering into a tolling agreement to allow Defendant OFAC additional time to review the matter.

g.  Plaintiff applied the loan payments solely toward the operation and maintenance of the managed properties, in which Mr. Deripaska ceased to have any beneficial interest long before his designation on April 6, 2018 (and which were not owned by Baufinanz).  At no time did Mr. Deripaska or Baufinanz receive any portion of these funds as loan repayments.

h.  Plaintiff is a first-time offender and an unsophisticated entity.

i.  Despite these undisputed facts, Defendant OFAC failed to apply mitigating factors in calculating the penalty imposed on Plaintiff, including General Factors A, B, and C, and therefore Defendant OFAC acted without a rational connection between the facts found and the penalty imposed.

j.  This penalty deviates sharply from Defendant OFAC's enforcement precedent and its penalty calculation departed from its own Enforcement Guidelines by denying Plaintiff mitigation credit for voluntary self-disclosure, full cooperation, and first-time offender status, while simultaneously applying aggravating factors without reasonable justification grounded in the record, including adding a penalty for delayed reporting which highlights Defendant OFAC's aggressive tactics against Plaintiff.

k.  Defendant OFAC's penalty appears to have been influenced, at least in part, by the unsealed September 29, 2022 Indictment naming Mr. Deripaska as a defendant, which occurred less than two months after Plaintiff's response to Defendant OFAC's administrative subpoena.  The Indictment charged Mr. Deripaska with conspiracy to violate IEEPA and, in conclusory fashion, alleged that since April 2018, "individuals and/or entities controlled by Deripaska transmitted millions of dollars to bank accounts held by Gracetown Inc." for the upkeep of properties managed by Plaintiff "for the benefit of Deripaska," and that Plaintiff used millions of dollars provided by "individuals and/or entities controlled by Deripaska" to pay various expenses associated with those properties. Ex. 2 ¶¶ 2, 6.  To the extent Defendant OFAC relied upon, or was influenced by, these unproven allegations in

determining its penalty, such reliance would be arbitrary and capricious since an indictment is not proof of wrongdoing, and treating unadjudicated allegations as established fact would lack a rational connection between the record evidence and the agency's decision.

l.   The $7,139,305 penalty imposed against Plaintiff by Defendant's actions was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A), and therefore must be set aside.

**COUNT II**
Violation of the Administrative Procedure Act ("APA")
5 U.S.C. § 706(2)(B)
U.S. Const. Amend. V (Due Process)

62.   Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

63.   The APA, 5 U.S.C. § 706(2)(B), prohibits federal agencies from taking any action contrary to a constitutional right, power, privilege, or immunity.  Plaintiff challenges Defendant's December 4, 2025 Penalty Notice as unlawful under the APA, 5 U.S.C. § 706(2)(B) under the Due Process Clause of the Fifth Amendment, U.S. Const. Amend. V, on the following grounds:

a.   Other sanctions programs administered by Defendant OFAC provide substantially greater procedural safeguards than those afforded under the URSR.  For example, in civil penalty enforcement proceedings under the Trading with the Enemy Act ("TWEA"), respondents are entitled to adjudication before an Administrative Law Judge ("ALJ").  The regulatory framework for TWEA violations creates a comprehensive administrative process that includes formal ALJ hearings for parties who contest alleged violations.

b.  By contrast, the URSR enforcement process lacks any comparable mechanism for impartial adjudication.  Respondents have no right to a hearing before a neutral decision maker, and no opportunity to present evidence in a formal setting.  This absence of procedural protections deprives respondents—including Plaintiff—of a meaningful opportunity to be heard, as required by the Fifth Amendment.

c.  Defendant OFAC's civil penalty process under the URSR is arbitrary and inconsistent with basic principles of due process, particularly given that other OFAC-administered programs provide more robust procedural safeguards and an ALJ adjudicative process.  The disparity in procedural protections between sanctions programs is irrational and unsupported by any legitimate governmental interest.

d.  Defendant OFAC imposed the civil monetary penalty against Plaintiff without any formal adjudication or impartial hearing.  The penalty was intended to punish Plaintiff for alleged conduct and to deter future similar conduct.  As such, it constitutes a punitive measure that should be enforced, if at all, through traditional judicial proceedings or equivalent formal administrative adjudications similar to TWEA.

e.  Defendant OFAC's actions are contrary to a constitutional right within the meaning of 5 U.S.C. § 706(2)(B), and therefore must be set aside.

## COUNT III
Violation of the Administrative Procedure Act ("APA")
5 U.S.C. § 706(2)(B)
U.S. Const. Amend. V (Equal Protection Under *Bolling v. Sharpe*, 347 U.S. 497 (1954))

64.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

65.    The APA, 5 U.S.C. § 706(2)(B), prohibits federal agencies from taking any action contrary to a constitutional right, power, privilege, or immunity.  Plaintiff challenges Defendant's December 4, 2025 Penalty Notice as unlawful under the APA, 5 U.S.C. § 706(2)(B), under the Equal Protection component of the Due Process Clause of the Fifth Amendment, U.S. Const. Amend. V, *Bolling v. Sharpe*, 347 U.S. 497 (1954), on the following grounds:

a.    Defendant OFAC denied Plaintiff "first violation" mitigation credit and applied aggravating factors based on Plaintiff's prior ownership by a "now-designated Russian oligarch," and upon information and belief, imposed a punitive penalty as a result of the national origin of its former and current ownership, rather than on the nature, willfulness, or severity of the alleged conduct.

b.    Plaintiff is a U.S. company with no prior violations of sanctions regulations, whose conduct involved inadvertent acceptance of small-value loan payments totaling approximately $31,250 during the relevant period.

c.    In comparable enforcement actions involving non-Russian-affiliated entities with similar first violations, Defendant OFAC applied mitigation credit and imposed substantially lower penalties.

d.    Defendant OFAC's disparate treatment of Plaintiff constitutes discrimination based on the national origin of its ownership and affiliation, without sufficient justification, and is not narrowly tailored to serve a compelling governmental interest.

e.  Defendant OFAC's conduct has caused, and will continue to cause, irreparable harm to Plaintiff by imposing a punitive civil monetary penalty based on the discriminatory application of aggravating factors and the denial of mitigation credit.

f.  Defendant OFAC's actions are contrary to a constitutional right within the meaning of 5 U.S.C. § 706(2)(B), and therefore must be set aside.

**COUNT IV**
Violation of the Administrative Procedure Act ("APA")
5 U.S.C. § 706(2)(B)
U.S. Const. Amend. VIII (Excessive Fines)

66.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

67.    Plaintiff challenges Defendant OFAC's December 4, 2025 Penalty Notice as unlawful under the APA, 5 U.S.C. § 706(2)(B), under the Excessive Fines Clause of the Eighth Amendment,  U.S. Const. Amend. VIII, on the following grounds:

a.  Defendant OFAC imposed a civil monetary penalty of $7,139,305, over two-hundred times the amount at issue, and close to the maximum statutory penalty permitted under the Enforcement Guidelines.

b.  The alleged conduct underlying the penalty consisted of inadvertent acceptance of small-value loan payments totaling approximately $31,250 during the relevant period, all of which were used exclusively for the operation and maintenance of the managed properties, conferred no repayment or other benefit to Mr. Deripaska or Baufinanz, and remained within the United States.

c.  Despite these mitigating factors, Defendant OFAC misapplied its Enforcement Guidelines, denied Plaintiff mitigation credit, and applied multiple aggravating

factors, resulting in a penalty that is grossly disproportionate to the nature, circumstances, and harm of the alleged violation.

d.  The penalty imposed on Plaintiff is grossly disproportionate to any proven conduct and appears to have been influenced, at least in part, by the unsealed September 29, 2022 Indictment naming Mr. Deripaska as a defendant which was issued less than two months after Plaintiff's response to Defendant OFAC's administrative subpoena.  The Indictment, which remains unproven in any court of law, alleged in conclusory terms that "individuals and/or entities controlled by Deripaska transmitted millions of dollars to bank accounts held by Gracetown Inc." for the upkeep of properties managed by Plaintiff "for the benefit of Deripaska," and that Plaintiff used millions of dollars provided by "individuals and/or entities controlled by Deripaska" to pay expenses associated with those properties. Ex. 2 ¶¶ 2, 6.   To the extent Defendant OFAC relied upon, or was influenced by, these unadjudicated allegations in determining the penalty, such reliance magnified the punitive nature of the sanction without any adjudicated finding of wrongdoing.  The result is a penalty that is excessive in relation to Plaintiff's conduct and unsupported by the record.

e.  The $7,139,305 penalty is punitive in nature and far exceeds any amount reasonably related to the gravity of Plaintiff's alleged conduct thereby violating Plaintiff's constitutional rights, and therefore must be set aside.

### **COUNT V**
Violation of the Administrative Procedure Act ("APA")
5 U.S.C. § 706(2)(B)
U.S. Const. Amend. VII (Right to Jury Trial)

27

68.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

69.    Plaintiff challenges Defendant OFAC's December 4, 2025 Penalty Notice as unlawful under the APA, 5 U.S.C. § 706(2)(B), under the Right to a Jury Trial of the Seventh Amendment,  U.S. Const. Amend. VII, on the following grounds:

    a.  Defendant OFAC imposed a civil monetary penalty of $7,139,305, close to the maximum statutory penalty permitted under the Enforcement Guidelines.

    b.  The penalty is punitive in nature, intended to punish Plaintiff for alleged violations of U.S. sanctions regulations under IEEPA, and, in effect, seeks to impose a corporate death sentence upon Plaintiff.

    c.  Civil monetary penalties of this type are analogous to traditional legal claims historically tried in Article III courts before a jury, including actions for fines and forfeitures under federal law.

    d.  When the government seeks civil penalties for conduct analogous to traditional common-law claims and the "public rights" exception does not apply, the defendant is entitled to a jury trial in an Article III court.  *SEC v. Jarkesy*, 603 U.S. 109, 115 (2024).

    e.  The penalty imposed by Defendant OFAC is predicated on allegations analogous to, *inter alia*, common-law concealment and related forms of misconduct which are the type of claims that, at common law, were historically tried before juries in Article III courts.

f. Defendant OFAC adjudicated and imposed the penalty through an internal administrative process, without affording Plaintiff the right to a jury trial in an Article III court, in violation of Plaintiff's Seventh Amendment right.

g. Defendant OFAC's $7,139,305 administrative penalty is punitive and subject to adjudication by an Article III court and trial by jury, thereby violating Plaintiff's constitutional rights, and therefore must be set aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Vacate and set aside Defendant OFAC's December 4, 2025 Penalty Notice pursuant to 5 U.S.C. § 706;

b) Declare the penalty imposed against Plaintiff to be arbitrary, capricious, and/or unlawful;

c) Declare Defendant OFAC's imposition of a civil monetary penalty against Plaintiff under the URSR violated Plaintiff's rights under the Fifth Amendment to the United States Constitution and was contrary to a constitutional right within the meaning of the APA, 5 U.S.C. § 706(2)(B);

d) Declare Defendant OFAC's penalty violated the Equal Protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution by denying mitigation credit and applying aggravating factors based on the national origin of Plaintiff's ownership;

e) Declare Defendant OFAC's penalty violated the Excessive Fines Clause of the Eighth Amendment to the United States Constitution by imposing a civil monetary penalty grossly disproportionate to the nature and circumstances of the alleged conduct;

f)  Declare Defendant OFAC's penalty violated Plaintiff's Seventh Amendment right to a jury trial by imposing a punitive civil penalty of the type historically adjudicated in Article III courts without affording Plaintiff a jury trial;

g)  Remand the matter to Defendant OFAC with instructions to recalculate any penalty in accordance with the Enforcement Guidelines, the APA, and the United States Constitution or in the alternative, set the matter for trial for Defendant OFAC to prove its allegations against Plaintiff;

h)  Enjoin Codefendants from enforcing the December 4, 2025 Penalty Notice or collecting the assessed penalty; and

i)  Award such other relief as the Court may deem just and proper.

Dated: January 12, 2026                    Respectfully submitted,

                                           */s/ Drew C. Harris*

                                           _____

                                           Drew C. Harris

                                           STEPTOE LLP
                                           1114 Avenue of the Americas
                                           New York, NY 10036
                                           dcharris@steptoe.com

                                           Patrick F. Linehan (*Pro Hac Vice
                                           Forthcoming*)
                                           Wendy Wysong (*Pro Hac Vice Forthcoming*)
                                           McKenzie Haynes (*Pro Hac Vice
                                           Forthcoming*)
                                           Maia Danna (*Pro Hac Vice Forthcoming*)
                                           1330 Connecticut Avenue, NW
                                           Washington, DC 20036
                                           plinehan@steptoe.com
                                           wwysong@steptoe.com
                                           mhaynes@steptoe.com
                                           mdanna@steptoe.com

                                           *Counsel for Gracetown, Inc.*