# EXHIBIT 13

Patrick F. Linehan
202 429 8154
plinehan@steptoe.com

**Steptoe**

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

January 10, 2025

Lisa M. Palluconi, Acting Director                **<u>Business Confidential Information</u>**
Office of Foreign Assets Control
U.S. Department of Treasury
Washington, DC 20220

Dear Ms. Palluconi,

Re: Request for Reconsideration of Prepenalty Notice ENF 885319 Gracetown

On behalf of our client, Gracetown, Inc. ("Gracetown"), we are submitting this letter to follow up on our request for reconsideration of the proposed penalty in the Pre-Penalty Notice ("PPN") issued by OFAC on October 8, 2024, which we submitted on November 22, 2024.  We are making this submission in furtherance of our efforts to reach a reasonable settlement which we confirmed in our discussion on December 19, 2024. We believe that OFAC's recent settlement with SkyGeek Logistics, Inc. ("SkyGeek") ("the SkyGeek Settlement") supports our view that the PPN proposed in the Gracetown matter runs radically off course from the way in which OFAC normally performs its penalty calculation and applies the General Factors.[1] We believe OFAC's application of the Economic Sanctions Enforcement Guidelines, 31 C.F.R. appendix A to part 501, in similar matters, including in the SkyGeek Settlement, strongly supports a significantly lower proposed penalty.

The circumstances giving rise to the SkyGeek Settlement are in critical respects both similar and distinguishable, all in ways that further demonstrate that OFAC's proposed penalty for Gracetown is wildly out of line with OFAC settlement precedent.  For example:

- Like Gracetown's Apparent Violations, it appears that SkyGeek's Apparent Violations were its ***negligent***[2] continuation of dealings that had been ***legal*** previously.

---

[1] *See* OFAC Enforcement Release dated December 31, 2024, *SkyGeek Logistics, Inc. Settles with OFAC for $22,172 for Apparent Violations of the Russian Harmful Foreign Activities Sanctions Regulations*, at https://ofac.treasury.gov/media/933866/download?inline ("the SkyGeek Release").

[2] *See* SkyGeek Release, at 2 (noting that "SkyGeek failed to exercise due caution or care for its sanctions compliance obligations…").

Lisa M. Palluconi, Acting Director
January 10, 2025
Page 2

Steptoe

- As it did with Gracetown, OFAC identified as an aggravating factor SkyGeek's failure to implement adequate sanctions-related controls that would have identified that the entities with which it had pre-designation relationships had become designated prior to the Apparent Violations.  However, OFAC also recognized that SkyGeek was "part of a sophisticated global enterprise" that continues to do business "worldwide"[3]— unlike Gracetown, a currently dormant business entity that when operational had two employees (a property manager and a gardener) with no accounting or compliance experience.

- Like the total value of Gracetown's Apparent Violations (totaling $31,250), the individual and collective transaction values of SkyGeek's Apparent Violations were low (totaling $20,941.39).

- Like Gracetown, SkyGeek made a voluntary self-disclosure ("VSD") to OFAC. Unlike Gracetown, however, SkyGeek (1) voluntarily disclosed *only some* of the Apparent Violations, and only after downstream banks had disclosed the related refund payments to OFAC (whereas Gracetown voluntarily disclosed all of their violative transactions without any prior disclosures by others), and (2) received significant credit for those voluntarily disclosed transactions, receiving both favorable calculation of the base penalty, as well as a further mitigating factor determination.

- OFAC found by providing "aviation products" to two companies operating in the technology and aerospace sectors of the Russian Federation economy (one of which was certified to work with the Russia Ministry of Defense), "SkyGeek's shipments directly benefitted an SDN designated for operating or having operated in Russia's aerospace and technology sectors, parts of Russia's military industrial base that enable its illegal war in Ukraine."[4]  This stands in sharp contrast to Gracetown's case, where there is no evidence that the payments it received ever benefited Mr. Deripaska or any other Russian SDN, let alone conferred a direct benefit to Russia's military efforts.

- SkyGeek, like Gracetown, had not received a Penalty Notice or Finding of Violation from OFAC in the five years preceding the earliest date of the transactions giving rise to the apparent violations. OFAC cited SkyGeek's first offender status as a mitigating factor, whereas it refused to do so in Gracetown's case.

Accordingly, despite an applicable maximum civil monetary penalty of $2,208,816, OFAC calculated for SkyGeek a base amount (before application of aggravating/mitigating factors) of

---

[3] *See* SkyGeek Release, at 3.

[4] *See* SkyGeek Release, at 3; *see also id*. ("While the value of the shipments was relatively low, SkyGeek's provision of goods to such a company undermined U.S. sanctions objectives and may have contributed to Russian military capabilities.").

Lisa M. Palluconi, Acting Director
January 10, 2025
Page 3

Steptoe

only $27,715 based on its grant of partial VSD credit, and applied a further 20% reduction based on the application of these mitigation factors against the weight of aggravating factors.

When viewed against OFAC's penalty calculation approach in the SkyGeek Settlement, the baseless and arbitrary nature of its calculation of Gracetown's proposed penalty is laid bare:

**Voluntary Disclosure Credit**.  SkyGeek received partial credit for the transactions it disclosed only after the disclosure of a related transaction with that same SDN by downstream banks.  Gracetown, on the other hand, received no voluntary disclosure credit at all, despite disclosing *all* of its problematic transactions without any prompting from third-party disclosures to OFAC.  OFAC's calculation of the base penalty amounts to 50% of the transaction value for SkyGeek's four voluntarily disclosed transactions, which is entirely consistent with its approach to voluntary disclosures in past reported resolutions. This simply cannot be reconciled with its outright refusal to grant Gracetown *any* voluntary disclosure credit.  As it did in SkyGeek, OFAC should grant Gracetown credit for *all* of the transactions it voluntarily disclosed (without any prompting from third-party disclosures), which would yield a base penalty amount—before application of the General Factors—of $15,625.

**Non-Egregiousness**.  OFAC concluded that SkyGeek's conduct was not egregious.[5] However, if the failure by a company that is "part of a sophisticated global enterprise" in the sensitive aviation sector to detect for months that two companies with which it had ongoing business relationships (and which supported Russia's Ukraine war efforts) had been designated SDNs is simply negligent and not egregious, OFAC cannot possibly justify any different treatment of Gracetown, an unsophisticated two-employee real estate management company, which inadvertently failed to recognize the effect of OFAC's designation of Mr. Deripaska on its passive receipt of small recurring monthly loan re-payments owed by an unrelated party, Scott McCarthy, to Baufinanz, that was itself only indirectly owned by Mr. Deripaska. Mr. McCarthy's payments, effectively assigned by Baufinanz to Gracetown, were subject to blocking only as a result of OFAC's 50 Percent Rule, long after those payments began by Mr. McCarthy.

**First Offender Status**.  SkyGeek received first offender status by meeting the same criteria that Gracetown indisputably met—*i.e.*, the absence of any penalty notice or Finding of Violation in the last five years.  Yet, OFAC declined to grant the same status to Gracetown, applying an unprecedented and standardless exception to this rule based on unproven facts and appearing nowhere in its Enforcement Guidelines.  As it did in the SkyGeek Settlement, OFAC should abide by the clear terms of its own Enforcement Guidelines, and allow for a further reduction of at least 25% on Gracetown's $15,625 base penalty.

**Benefit to SDNs**.  Although SkyGeek had provided direct benefits to two SDNs operating in Russia's aerospace and technology sectors—sectors that are a vital part of Russia's military industrial base in its war in Ukraine—this determination apparently did not stand in the way of further 25% reduction of SkyGeek's base penalty after applying the aggravating and mitigating factors.  By contrast, Gracetown spent the payments it received for its own purposes on

---

[5] *See* SkyGeek Release, at 1, 2.

Lisa M. Palluconi, Acting Director
January 10, 2025
Page 4

Steptoe

maintaining real estate located in the United States, and there is no evidence that these payments ever benefited Mr. Deripaska or any other Russian SDN, let alone conferred a direct benefit to Russia's military efforts.

**Low Dollar Amount.**  Despite SkyGeek's status as a sophisticated company, OFAC's grant of voluntary disclosure credit notwithstanding prior related disclosures to OFAC by third parties, and the benefits SkyGeek's conduct conferred to Russia's aerospace efforts (and by extension, its Ukraine war efforts), SkyGeek's penalty—$22,172—still represents only *1%* of the maximum statutory civil monetary penalty applicable in that case.  This approach is well within the range of prior OFAC settlement precedent given the underlying circumstances, particularly the low value of SkyGeek's violative transactions.  The notion that Gracetown—which (1) disclosed its conduct more fully and voluntarily than SkyGeek, (2) like SkyGeek, qualifies for first offender status, (3) engaged in conduct much less egregious than SkyGeek, and (4) unlike SkyGeek, did not confer any benefit to Russia's war effort—should nonetheless be penalized in an amount *over 300 times the value of the transactions at issue*, strains credulity, to say the least.

*      *      *

As stated in Gracetown's response to the PPN, the Gracetown matter amounts to, at best, a negligent failure by Gracetown to intercede on its passive receipt of 24 monthly checks totaling only $31,250 over the course of two years. OFAC's proposed penalty does not reflect this fact, and cannot be reconciled with OFAC's prior settlement precedent.  The SkyGeek Settlement is the latest manifestation of that precedent, and further demonstrates the arbitrary and capricious nature of OFAC's proposed penalty in this matter.

Accordingly, we continue to believe that the proposed penalty in the PPN is extreme, unprecedented, and unwarranted, and as we indicated during our last call on December 19, 2024, Gracetown invites OFAC to provide a more detailed explanation as to why it believes otherwise, as it still remains open to a reasonable resolution of this matter. For the foregoing reasons and those stated in Gracetown's response to the PPN, we respectfully request a fair application and consideration of the Enforcement Guidelines in the Gracetown matter and a significantly lower proposed penalty than the one suggested in the PPN.

This filing contains business confidential information exempt from disclosure under the Freedom of Information Act. Please contact us before releasing any of the information we are providing to OFAC.

Yours sincerely,

Patrick F. Linehan